IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| GRADY WARE, FRANCES WARE, RICKY BUNN, EVELYN ATKINS, MILDRED AVERY,  KATHY BREDESON, on behalf of her son Jason Hill, LAVINIA BRUCE, SUSAN CANNON, VICKI DENHAM, on behalf of her legal ward Zoie Highfill, KELLI HAMMOND, on behalf of her son Logan Walston, JOSE HINOJOSA and MARGARITA ZAMORA, individually and on behalf of their minor children Darcy Garcia and Jose Carlos Hinojosa, DEXTER JAMES and LISA JAMES, individually and on behalf of their minor children Roy James and Kaylee James, JULIE JARRELL, JOHNNY JONES, PHYLLIS JONES, ANNETTA LESUEUR, on behalf of her son Jeremane Lesuer, LINDA LEWIS, JOSEPH McBRIDE, VICKI McBRIDE, VIRGINIA McELVATH, DEBORAH MEEK, JOHN MENKE, LINDA MOORE, ERICA SCHURR, WILLIAM SPROULE, JR., HOWARD STANLEY, VICKI TODD, LOUISE VON NIEDA, JOHANNA WILSON, individually and on behalf of her minor daughter Emerald Wilson, and RICHARD ZAMSKY on behalf of themselves and all others similarly situated, | * * * * * * * * * * * * * * * * * | Civil Action No.: 4:07-CV-040-HLM  Amended Complaint-- Class Action  Jury Demand |
| Plaintiffs, | * | |
| v. | * | |
| CONAGRA FOODS, INC., a Delaware Corp., | * | |

\*

Defendant.

## AMENDED COMPLAINT – CLASS ACTION

Plaintiffs, by their attorneys, bring this action on behalf of themselves and all others similarly situated, the members of the plaintiff class described and defined herein, and allege as follows against Defendant ConAgra Foods, Inc. (hereafter "Defendant" or "ConAgra:")

## INTRODUCTION

1.    Plaintiffs bring this case on behalf of themselves and all others who claim to have contracted *Salmonella* Tennessee from eating ConAgra's contaminated peanut butter, which was all manufactured and packaged in a single location – ConAgra's plant in Sylvester, Georgia.

2.    On February 14, 2007, the Food and Drug Administration (FDA) issued a national warning advising people not to eat from certain jars of Peter Pan brand or Great Value brand peanut butter due to a risk of contamination with *Salmonella* Tennessee

3.    At the same time it issued its warning to consumers, the FDA announced a recall of ConAgra's implicated peanut butter.

4.    *Salmonella* Tennessee is a bacterium that can cause fever, diarrhea, abdominal cramps, and, in a person with poor underlying health or

weakened immune systems, life-threatening infections.

5.    *Salmonella* Tennessee lives in the intestinal tracts of warm blooded animals, such as rats and birds, and is found in their feces.

6.    The FDA's February 14, 2007 warning was based upon an epidemiological study by the Centers for Disease Control and Prevention (CDC,) and state and local health agencies, which linked, at that time, 288 cases of food-borne illness in 39 states to consumption of ConAgra's peanut butter.

7.    On February 21, 2007, the FDA confirmed the presence of *Salmonella* Tennessee in opened jars of Peter Pan and Great Value peanut butter obtained from infected persons.

8.    As of February 28, 2007, according to the Centers for Disease Control and Prevention, there were at least 370 cases from 42 states of *Salmonella* Tennessee caused by ConAgra's peanut butter, with at least 60 requiring hospitalization.

9.    By March 7, the CDC had reports of 425 people in 44 states having been infected with the outbreak strain of *Salmonella* Tennessee, 71 of whom were hospitalized.

10.    By March 10, the recall of ConAgra's peanut butter was

extended back to include all peanut butter manufactured from October, 2004 to present.

## PARTIES

11.     Plaintiffs Grady Ware and Frances Ware are citizens and residents of Chatsworth, Murray County Georgia.  The Wares bring this action on behalf of themselves and for all other similarly situated individuals residing in the United States.

12.     Plaintiff Ricky Bunn is a citizen of Nashville, Tennessee. Mr. Bunn brings this action on his individual behalf and for all other similarly situated individuals residing in the United States.

13.     Plaintiff Evelyn Atkins is a citizen of Camden, Tennessee. Mrs. Atkins brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

14.     Plaintiff Mildred Avery is a citizen of Grandview, Washington.  Ms. Avery brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

15.     Plaintiff Kathy Bredeson and her son Jason Hill are citizens of Dalton, Whitfield County, Georgia.  Kathy Bredeson is the natural guardian for her adult son, Jason Hill, who is incapacitated with cerebral palsy.  Ms. Bredeson brings this suit on behalf of Jason Hill and for all others

similarly situated.

16.    Plaintiff Lavinia Bruce is a citizen of Newberry, South Carolina.  Ms. Bruce brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

17.    Plaintiff Susan Cannon is a citizen of Lake Charles, Louisiana.  Ms. Cannon brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

18.    Plaintiff Vicki Denham is a citizen of Cabot, Arkansas. She is the legal guardian of her niece, Zoie Highfill.  Ms. Denham brings this action on behalf of her legal ward Zoie Highfill and for all other similarly situated individuals residing in the United States.

19.    Plaintiff Kelli Hammond in a citizen of Flomaton, Alabama.  Ms. Hammond brings this action on behalf of her minor son Logan Walston and for all other similarly situated individuals residing in the United States.

20.    Plaintiffs Jose Hinojosa and Margarita Zamora are citizens of Richmond, Texas.   Mr. Hinojosa and Ms. Zamora bring this action on behalf of themselves, their minor children Darcy Garcia and Jose Carlos Hinojosa, and for all other similarly situated individuals residing in the United States.

21.    Plaintiffs Dexter James and Lisa James are citizens of Winter Garden, Florida.  Dr. and Mrs. James bring this action on behalf of themselves, their minor children Roy James and Kaylee James, and for all other similarly situated individuals residing in the United States.

22.    Plaintiff Julie Jarrell is a citizen of Oakley, California.  Ms. Jarrell brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

23.    Plaintiff Johnny Jones and Phyllis Jones are citizens and residents of Lenore, West Virginia.  Mr. and Mrs. Jones bring this action on behalf of themselves and for all other similarly situated individuals residing in the United States.

24.    Plaintiff Annetta Lesueur and her son Jeremane Lesueur are citizens of Holly Springs, Mississippi.  Ms. Lesueur has been duly appointed as the legal guardian of her twenty-year old son Jeremane Lesueur. Ms. Lesueur brings this action on behalf of Jeremane Lesueur and for all other similarly situated individuals residing in the United States.

25.    Plaintiff Linda Lewis is a citizen of Romance, Arkansas. Ms. Lewis brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

26.    Plaintiffs Joseph McBride and Vicki McBride are citizens

of Hymera, Indiana.  Mr. and Mrs. McBride bring this action on behalf of themselves and for all other similarly situated individuals residing in the United States.

27.    Plaintiff Virginia McElvath is a citizen of Friendship, Tennessee.  Ms. McElvath brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

28.    Plaintiff Deborah Meek is a citizen of Jackson, Ohio.  Ms. Meek brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

29.    Plaintiff John Menke is a citizen of Albertville, Alabama.  Mr. Menke brings this action on his individual behalf and for all other similarly situated individuals residing in the United States.

30.    Plaintiff Linda Moore is a citizen of Dalton, Whitfield County, Georgia.  Ms. Moore brings this action on her individual behalf and for all other similarly situated individuals.

31.    Plaintiff Erica Schurr is a citizen of Lake Charles, Louisiana.  Ms. Schurr brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

32.    Plaintiff William Sproule, Jr. is a citizen of Palm City, Florida.  Mr. Sproule brings this action on his individual behalf and for all

other similarly situated individuals residing in the United States.

33.     Plaintiff Howard Stanley is a citizen of Slidell, Louisiana. Mr. Stanley brings this action on his individual behalf and for all other similarly situated individuals residing in the United States.

34.     Plaintiff Vicki Todd is a citizen of Paducah, Kentucky. Ms. Todd brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

35.     Plaintiff Louise Von Nieda is a citizen of Manalapan, Florida.  Ms. Von Nieda brings this action on her individual behalf and for all other similarly situated individuals residing in the United States.

36.     Plaintiff Johanna Wilson is a citizen of Manning, South Carolina.  Ms. Wilson brings this action on her individual behalf, on behalf of her minor daughter Emerald Wilson, and for all other similarly situated individuals residing in the United States.

37.     Plaintiff Richard Zamsky is a citizen of Manalapan, Florida.  Mr. Zamsky brings this action on his individual behalf and for all other similarly situated individuals residing in the United States.

38.     Defendant ConAgra Foods, Inc. is a corporation organized under the laws of the State of Delaware that has its corporate headquarters located in Omaha, Nebraska.

39.     At all times relevant, ConAgra manufactured, advertised, marketed, distributed, and sold Peter Pan and Great Value peanut butter throughout the United States.

## JURISDICTION AND VENUE

40.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the named plaintiffs and the defendant are of diverse citizenship, and under 28 U.S.C. § 1332(d)(2,) because this is a class action in which (a) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, (b) there are at least 100 class members, and (c) at least one member of the plaintiff class is a citizen of a state other than Delaware or Nebraska.

41.     This Court has general personal jurisdiction over ConAgra because it conducted systematic and continuous business activities in and throughout the State of Georgia by manufacturing its peanut butter in Georgia and by advertising, marketing, distributing, and selling peanut butter to the Class Representatives and class members in Georgia and elsewhere.

42.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a) because ConAgra conducts business in Georgia, and within this judicial district, within the meaning of 28 U.S.C. § 1391(a) as defined in § 1391(c,) and because a substantial part of the events giving rise to this claim

occurred in Georgia, including ConAgra's manufacturing and packaging of the contaminated peanut butter, and the Wares', Mr. Hill's and Ms. Moore's consumption of ConAgra's contaminated peanut butter and their resulting infection.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification under the applicable provisions of Rule 23 on behalf of a class defined as:

> All people, since October 1, 2004, who consumed any Peter Pan brand peanut butter or any Great Value brand peanut butter that has a product-code beginning with a 2111, and who claim to have contracted *Salmonella* Tennessee.

44.    Excluded from the class is ConAgra, including any parent, subsidiary, affiliate or controlled person of the defendant and its officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

45.    The class is so numerous that individual joinder of all its members is impracticable.  To date, the CDC has reported that at least 425 people have been infected by ConAgra's contaminated peanut butter.  The true number of impacted people is likely much higher.

46.    In this action, significant common issues of law and fact

relating to the contamination of ConAgra's product at its Georgia manufacturing plant, and the related conduct, duty and resulting liability of ConAgra predominate over any issues affecting only individual class members.

47.     Plaintiffs' claims are typical of the claims of the Class. The harm to Plaintiffs and the members of the Class was caused by ConAgra's wrongful conduct.  ConAgra's peanut butter, which harmed the plaintiffs, suffered from the same defect, *Salmonella* contamination, from the same source as the peanut butter that caused harm to all other class members.

48.     This Court may elect, in its discretion, to maintain these claims as a class action under Rule 23(b)(1,) (b)(3,) and/or 23(c)(4)(A) of the Federal Rules of Civil Procedure.

49.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for ConAgra and/or because adjudications respecting individual members of the class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impeding their ability to protect their interests.

50.    Class certification is also appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common issues of law and fact predominate over issues involving only individual Class members.

51.    Plaintiffs are members of the class described herein and their claims are typical of the class.

52.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.  They have no interests that are adverse to the interests of the class.

53.    Plaintiffs have retained counsel competent and experienced in complex tort, consumer and class action litigation, including cases involving mass torts, defective products and food contamination.

54.    A class action approach is superior to other available methods for the fair and efficient adjudication of this dispute because common questions of law and fact predominate over any questions that may affect only individual members of the class and there would be significant economies to the courts and the parties in litigating the common issues on a class wide basis rather than in repetitive individual trials.  A class approach would consolidate these matters and create fewer management difficulties because it would provide the benefits of unitary adjudication, judicial economy, economies of

scale and comprehensive supervision by a single court.

55.     Class certification is also appropriate because this Court can designate particular claims or issues for classwide treatment pursuant to Rule 23(c)(4)(A) and may designate one or more subclasses pursuant to Rule 23(c)(4)(B) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

56.     Plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

57.     *Salmonella* is a bacterium that lives in the intestinal tracts of humans and other animals.  *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with feces of animals such as birds or rats.  Food may also become contaminated by the unwashed hands of an infected food handler.  Foods contaminated with *Salmonella* usually look and smell normal.

58.     Between 12 and 72 hours after infection with *Salmonella*, most people develop nausea, diarrhea, fever, fatigue, muscle pain and abdominal cramps. The illness usually lasts 4 to 7 days.

59.     However, some infected people develop diarrhea so severe that they need to be hospitalized.

60.    In some infected people, the *Salmonella* infection spreads from the intestines to the blood stream, and then to other body sites and can cause death, unless the person is treated promptly with antibiotics.   The elderly, infants, and those with impaired immune systems are more likely to have a severe illness.

61.    On February 14, 2007, the FDA issued a national warning advising people not to eat from jars of Peter Pan brand or Great Value brand peanut butter bearing a product code beginning with "2111" due to a risk of contamination with *Salmonella* Tennessee,

62.    The FDA's warning was based upon a recent epidemiological study by the CDC and state and local health agencies, which linked 288 cases of foodborne illness in 39 states to consumption of varying types of Peter Pan peanut butter.

63.    On February 21, 2007, the FDA confirmed the presence of *Salmonella* Tennessee in opened jars of Peter Pan and Great Value peanut butter obtained from infected persons.  As of that date, 329 cases of people infected with *Salmonella* Tennessee had been reported to the CDC.

64.    By February 28, federal health officials confirmed that at least 370 people from 42 states had been infected with *Salmonella* Tennessee from Con Agra's peanut butter, with at least 70 requiring hospitalization.

65.    By March 7, the CDC had confirmed reports of 425 people in 44 states having been infected with the outbreak strain of Salmonella Tennessee.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFFS GRADY AND FRANCES WARE

66.    Sometime in early February, 2007, Grady and Frances Ware purchased a jar of Peter Pan brand peanut butter.

67.    The jar carried a product code beginning with "2111" on the jar lid.

68.    Grady Ware consumed several spoonfuls of the peanut butter on or around February 15, 2007.

69.    Frances Ware consumed several spoonfuls of the peanut butter on or around February 17, 2007.

70.    On February 16, 2007, Grady Ware began to experience diarrhea, vomiting, and severe abdominal pain.

71.    Grady Ware's diarrhea worsened over the night.    On February 17, 2007, he went to the hospital with symptoms consistent with *Salmonellosis*.   He remained in the hospital overnight and returned home on February 18, 2007.  He is still recovering from his injuries.

72.    On February 18, 2007, Frances Ware also began to experience diarrhea, vomiting, and severe abdominal pain.

73.     On February 19, 2007, she went to the hospital.  She remained in the hospital overnight and returned home on February 20, 2007. Like her husband, Mrs. Ware is still recovering from her injuries.

## FACTUAL ALLEGATIONS RELATED TO

## PLAINTIFF RICKY BUNN

74.     Sometime in early February, 2007, Ricky Bunn purchased a jar of Peter Pan peanut butter.

75.     The jar carried a product code beginning with "2111" on the jar lid.

76.     Mr. Bunn consumed some of the peanut butter on or around February 7, 2007.

77.     On February 8, 2007, Mr. Bunn began to experience diarrhea and severe abdominal pain.  He had a fever of 104 degrees.  He did not consult a physician because he did not have health insurance.

78.     Because of his illness, Mr. Bunn missed five days of work.

## FACTUAL ALLEGATIONS RELATED TO

## PLAINTIFF EVELYN ATKINS

79.     Sometime in December, 2006, Evelyn Atkins purchased a jar of Peter Pan peanut butter.

80.     The jar carried a product code beginning with "2111" on the jar lid.

81.    Mrs. Atkins consumed some of the peanut butter on or around December 26, 2007.

82.    On or around December 27, 2006, Mrs. Atkins began to experience nausea, vomiting, abdominal cramps, diarrhea, and dehydration.

83.    On or around December 29, 2007, Mrs. Atkins was admitted to the hospital for treatment for her symptoms.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF MILDRED AVERY

84.    Sometime in August, 2006, Mildred Avery purchased two jars of Great Value peanut butter.

85.    Both jars carried a product code beginning with "2111" on the jar lid.

86.    Ms. Avery consumed some of the peanut butter in August, 2006.

87.    After consuming the peanut butter, Ms. Avery began to experience nausea, vomiting, abdominal cramps, diarrhea, and dehydration.

88.    Unaware that the Great Value peanut butter was the cause of her illness, Ms. Avery continued to eat the contaminated peanut butter through mid-February, 2007.

89.    Throughout the period from August 2006 to mid-February,

2007, Ms. Avery experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

90.     Ms. Avery sought treatment from her doctor for her symptoms several times during the period from August 2006 to mid-February, 2007.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF KATHY BREDESON

91.     Sometime in September, 2006, Kathy Bredeson purchased a jar of Peter Pan peanut butter.

92.     The jar carried a product code beginning with "2111" on the jar lid.

93.     Kathy Bredeson's adult son, Jason Hill, has cerebral palsy and had suffered testicular cancer in 2006.

94.     Jason Hill consumed some of the peanut butter in the Fall of 2006.

95.     After consuming the peanut butter, Jason Hill began to experience nausea, vomiting, abdominal cramps, diarrhea, and dehydration.

96.     Unaware that the Peter Pan peanut butter was the cause of Jason Hill's illness, Ms. Bredeson continued to prepare meals containing the peanut butter for Jason through mid-February, 2007, as it was necessary for

him to keep his blood sugar up due to his other physical conditions.

97.    Throughout the period from September, 2006 to mid-February, 2007, Jason Hill experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

98.    Jason Hill visited a doctor several times during the period from September, 2006 to mid-February, 2007, for treatment for his symptoms.

99.    In mid-February, 2007, after learning of the product recall, Jason Hill stopped consuming peanut butter from the aforementioned jar of Peter Pan peanut butter, and his symptoms disappeared.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF LAVINIA BRUCE

100.    Sometime in January, 2007, Lavinia Bruce purchased a jar of Peter Pan peanut butter.

101.    The jar carried a product code beginning with "2111" on the jar lid.

102.    Ms. Bruce consumed some of the peanut butter in mid-January, 2007.

103.    After consuming the peanut butter, Ms. Bruce began to experience nausea, vomiting, abdominal cramps, diarrhea, and dehydration.

104.    Unaware that the Peter Pan peanut butter was the cause of

her illness, Ms. Bruce continued to eat the contaminated peanut butter through mid-February, 2007.

105. Throughout the period from mid-January, 2007 to mid-February, 2007, Ms. Bruce experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

106. Ms. Bruce sought treatment from her doctor for her symptoms on or around February 2, 2007, and February 16, 2007.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF SUSAN CANNON

107. On or about February 12, 2007, Susan Cannon consumed peanut butter from a jar of Peter Pan peanut butter.

108. The jar carried a product code beginning with "2111" on the jar lid.

109. After consuming the peanut butter, Ms. Cannon began to experience diarrhea, fatigue, fever, loss of appetite and severe abdominal pain. She continued to experience these symptoms for approximately one week.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF VICKI DENHAM

110. Sometime in early February, 2007, Vicki Denham purchased a jar of Peter Pan peanut butter.

111. The jar carried a product code beginning with "2111" on

the jar lid.

112.   On February 18, 2007, Ms. Denham gave some of the peanut butter to her niece, Zoie Highfill, who consumed it immediately.

113.   On February 19, 2007, Zoie started experiencing diarrhea, nausea, and abdominal cramps.

114.   The following day, February 20, 2007, Ms. Denham took Zoie to her pediatrician.

115.   Zoie's symptoms continued through March 2, 2007, at which time she was hospitalized for dehydration.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF KELLI HAMMOND

116.   Sometime in early February, 2007, Kelli Hammond purchased a jar of Peter Pan peanut butter.

117.   The jar carried a product code beginning with "2111" on the jar lid.

118.   On or around September 17, 2006, Ms. Hammond made a peanut butter sandwich for her ten-year old son Logan Walston using the Peter Pan peanut butter.

119.   On or around September 18, 2007, Logan began experiencing diarrhea, vomiting, nausea, and fever.

120. Logan symptoms continued through September 21, 2006, when Ms. Hammond took Logan to his pediatrician.

121. Later that evening, Logan started passing blood in his stool.

122. On or around the evening of September 18, 2006, Ms. Hammond took Logan to the emergency room, where he remained until the next morning.

123. Doctors in the emergency room took a stool sample from Logan, which has since tested positive for *Salmonella*.

124. Logan remained ill for the following two weeks.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFFS JOSE HINOJOSA AND MARGARITA ZAMORA

125. Sometime during December, 2006, Jose Hinojosa, Margarita Zamora, their seventeen-year old daughter Darcy Garcia, and their ten-year old son Jose Carlos Hinojosa consumed peanut butter from a jar of Peter Pan peanut butter.

126. The jar carried a product code beginning with "2111" on the jar lid.

127. Approximately one day after consuming the peanut butter, Jose Hinojosa began to experience nausea, vomiting, abdominal cramps,

diarrhea, and fever.  His symptoms continued for approximately one week.

128.  After consuming the peanut butter, Margarita Zamora began to experience nausea, vomiting, abdominal cramps, diarrhea, and fever. Her symptoms continued for approximately three weeks.

129.  The morning after consuming the peanut butter, Darcy Garcia began to experience nausea, vomiting, abdominal cramps, and fever.  Her symptoms continued for approximately one week.

130.  The morning after consuming the peanut butter, Jose Carlos Hinojosa began to experience nausea, vomiting, abdominal cramps, diarrhea, and fever.  His symptoms continued for approximately four days.

131.  Mr. Hinojosa and Ms. Zamora have two other children. Neither child ate from the jar of Peter Pan peanut butter, and neither experienced any of the aforementioned symptoms.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFFS DEXTER AND LISA JAMES

132.  Sometime in early February, 2007, Dexter and Lisa James purchased a jar of Peter Pan brand peanut butter.

133.  The jar carried a product code beginning with "2111" on the jar lid.

134.  Between February 5, 2007 and February 12, 2007, Dexter James, Lisa James, and their children Roy James and Kylee James, consumed

peanut butter from the jar.

135.   Dexter James, Lisa James, and Roy James experienced nausea, diarrhea, fatigue, loss of appetite, and abdominal cramping.   They continued to experience these symptoms for approximately one week.

136.   After consuming peanut butter from the jar, Kylee James experienced vomiting, diarrhea, fever, fatigue, loss of appetite, and abdominal cramping.   Mr. and Mrs. James took Kylee to her pediatrician after she had been experiencing these symptoms for several days.

137.   Kylee James continued to experience these symptoms for approximately one week.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF JULIE JARRELL

138.   Sometime in early June, 2006, Julie Jarrell purchased a jar of Peter Pan peanut butter.

139.   The jar carried a product code beginning with "2111" on the jar lid.

140.   On or around June 15, 2006, Ms. Jarrell consumed some of the peanut butter.

141.   On or around June 16, 2006, Ms. Jarrell began to experience nausea, vomiting, diarrhea, and severe abdominal cramps.

142.   Her symptoms continued through June 18, 2006, when she went to the hospital for treatment.   She remained in the hospital for approximately six days.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFFS JOHNNY JONES AND PHYLLIS JONES

143.   Sometime in October, 2006, Phyllis Jones purchased a jar of Peter Pan peanut butter.

144.   The jar carried a product code beginning with "2111" on the jar lid.

145.   Sometime in late October, 2006, Johnny and Phyllis Jones consumed some of the Peter Pan peanut butter.

146.   In the days following their consumption of the Peter Pan peanut butter, both Johnny and Phyllis Jones began experiencing nausea, vomiting, diarrhea, fatigue, and abdominal cramping.

147.   Unaware that the Peter Pan peanut butter was the cause of their illness, Mr. and Mrs. Jones continued to eat the contaminated peanut butter through December, 2006.

148.   Throughout the period from October, 2006 to December, 2006, Mr. and Mrs. Jones experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

149. During the period from October, 2006 to December, 2006, both Johnny and Phyllis Jones sought medical treatment.

150. Phyllis Jones, who was employed as a substitute teacher for the Mingo County Board of Education, was often too ill to accept substitute teaching assignments during the period from October, 2006, to December, 2006. As a result, she lost her job.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF ANNETTA LESUEUR

151. Sometime in February, 2007, Annetta Lesueur purchased a jar of Peter Pan peanut butter.

152. The jar carried a product code beginning with "2111" on the jar lid.

153. On or around February 20, 2007, Ms. Lesueur prepared a peanut butter sandwich for her son Jeremane using the Peter Pan peanut butter.

154. Jeremane Lesueur is twenty-years old. He is mentally disabled and suffers from a severe seizure disorder.

155. On or around February 21, 2007, Jeremane began experiencing diarrhea, vomiting, abdominal cramps, and fever.

156. Jeremane's vomiting and diarrhea continued the following

two days. Jeremane repeatedly vomited up his seizure medication, causing him to undergo repeated seizures.

157. On February 25, 2007, Ms. Lesueur took Jeremane to the hospital. Jeremane spent the next two days in intensive care receiving treatment for dehydration as well as other treatments associated with the exacerbation of his seizure disorder.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF LINDA LEWIS

158. Sometime in early January, 2007, Linda Lewis purchased a jar of Great Value peanut butter.

159. The jar carried a product code beginning with "2111" on the jar lid.

160. Sometime in January, 2006, Ms. Lewis consumed some of the Great Value peanut butter.

161. In the days following her consumption of the Great Value peanut butter, she began experiencing nausea, vomiting, diarrhea, fatigue, and abdominal cramping.

162. Unaware that the Great value peanut butter was the cause of her illness, Ms. Lewis continued to eat the contaminated peanut butter through mid-February, 2007.

163. Throughout the period from early January, 2007, to mid-February, 2007, Ms. Lewis experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

164. Ms. Lewis visited her doctor for treatment for her symptoms on February 16, 2007 and February 19, 2007.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF JOSEPH McBRIDE AND VICKI McBRIDE

165. Sometime in late May or early June, 2006, Mr. and Mrs. McBride purchased a jar of Peter Pan peanut butter.

166. The jar carried a product code beginning with "2111" on the jar lid.

167. Joseph McBride consumed some of the peanut butter in mid-June, 2006.

168. The day after consuming the peanut butter, Joseph McBride began to experience nausea, vomiting, severe diarrhea, abdominal pain, and fever.

169. Joseph McBride was hospitalized for five days for treatment for his symptoms and subsequent dehydration.

170. Vicki McBride consumed some of the peanut butter in late August or early September, 2006.

171.   The day after consuming the peanut butter, Vicki McBride began to experience nausea, vomiting, severe diarrhea, abdominal pain, and fever.

172.   Vicki McBride was hospitalized for two days for treatment for her symptoms and subsequent dehydration.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF VIRGINIA McELVATH

173.   Sometime in November, 2006, Virginia McElvath consumed peanut butter from a jar of Great value peanut butter.

174.   The jar carried a product code beginning with "2111" on the jar lid.

175.   In the days following her consumption of the Great Value peanut butter, she began experiencing nausea, vomiting, diarrhea, fatigue, and abdominal cramping.

176.   Unaware that the Great Value peanut butter was the cause of her illness, Ms. McElvath continued to eat the contaminated peanut butter through mid-February, 2007.

177.   Throughout the period from early November, 2006, to mid-February, 2007, Ms. McElvath experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, loss of appetite and

dehydration.

178.   Ms. McElvath sought medical treatment for her symptoms several times during the period from November, 2006 to mid-February, 2007, including one trip to the emergency room.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF DEBORAH MEEK

179.   Sometime in late November, 2006, Deborah Meek purchased a jar of Peter Pan peanut butter.

180.   The jar carried a product code beginning with "2111" on the jar lid.

181.   Ms. Meek consumed some of the peanut butter sometime after November 23, 2006.

182.   Before the end of November, Ms. Meek began to experience nausea, vomiting, diarrhea, fever, fatigue, loss of appetite and abdominal cramps.

183.   Ms. Meek sought medical treatment for her symptoms several times in December, 2006 through February, 2007, including one trip to the emergency room on February 18, 2007.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF JOHN MENKE

184.   Sometime in late January, 2007, John Menke purchased a

jar of Peter Pan peanut butter.

185. The jar carried a product code beginning with "2111" on the jar lid.

186. Mr. Menke consumed some of the peanut butter during the first week of February, 2007.

187. Approximately two days after consuming the peanut butter, Mr. Menke began to experience diarrhea vomiting, nausea, fever, fatigue, and severe abdominal pain. These symptoms continued for approximately five days.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF LINDA MOORE

188. Sometime in January, 2007, Linda Moore purchased a jar of Peter Pan peanut butter.

189. The jar carried a product code beginning with "2111" on the jar lid.

190. Ms. Moore consumed some of the peanut butter in mid-January, 2007.

191. After consuming the peanut butter, Ms. Moore began to experience nausea, vomiting, abdominal cramps, diarrhea, and dehydration.

192. Unaware that the Peter Pan peanut butter was the cause of

her illness, Ms. Bruce continued to eat the contaminated peanut butter through mid-February, 2007.

193.   Throughout the period from mid-January, 2007 to late February, 2007, Ms. Moore experienced repeated episodes of nausea, diarrhea, vomiting, abdominal cramping, fatigue, and loss of appetite.

194.   Ms. Moore was admitted to the hospital on March 1, 2007, for treatment for her ongoing symptoms.   She remained in the hospital for approximately three days.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF ERICA SCHURR

195.   On or about February 12, 2007, Erica Schurr consumed peanut butter from a jar of Peter Pan peanut butter.

196.   The jar carried a product code beginning with "2111" on the jar lid.

197.   Several hours after consuming the peanut butter on or about February 12, 2007, Ms. Schurr began to experience diarrhea, fatigue, fever, loss of appetite and severe abdominal pain.   She continued to experience these symptoms for approximately one week.

198.   Because of her illness, Ms. Schurr missed approximately five days of work and lost her job.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF WILLIAM SPROULE, JR.

199.   Sometime in December, 2006, William Sproule, Jr. purchased a jar of Peter Pan peanut butter.

200.   The jar carried a product code beginning with "2111" on the jar lid.

201.   Mr. Sproule consumed some of the peanut butter during the first week in January, 2007.

202.   Approximately one day after consuming the peanut butter, Mr. Sproule began to experience nausea, vomiting, diarrhea, fatigue, fever, loss of appetite and severe abdominal pain.

203.   Mr. Sproule's symptoms continued for several weeks.

204.   On January 27, 2007, Mr. Sproule went to the emergency room for treatment for his symptoms and his subsequent dehydration.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF HOWARD STANLEY

205.   Sometime in early February, 2007, Howard Stanley purchased a jar of Peter Pan peanut butter.

206.   The jar carried a product code beginning with "2111" on the jar lid.

207.   Mr. Stanley consumed some of the peanut butter on or

around February 10, 2007.

208.   On February 12, 2007, Mr. Stanley began to experience diarrhea, nausea, vomiting, and severe abdominal pain.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF VICKI TODD

209.   Sometime in early December 2006, Vicki Todd consumed peanut butter from a jar of Peter Pan peanut butter.

210.   The jar carried a product code beginning with "2111" on the jar lid.

211.   In the days following her consumption of the Peter Pan peanut butter, Ms. Todd began experiencing nausea, vomiting, diarrhea, fatigue, and abdominal cramping.

212.   On December 11, 2006, she was hospitalized for her symptoms.  She remained in the hospital for six days.

213.   Unaware that the Peter Pan peanut butter was the cause of her illness, Ms. Todd again consumed peanut butter from the jar of Peter Pan Peanut butter in January, 2007.

214.   Once again, in the days following her consumption of the Peter Pan peanut butter, she began experiencing nausea, vomiting, diarrhea, fatigue, and abdominal cramping.

215.   On January 16, 2007, Ms. Todd was again hospitalized overnight for her symptoms.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF LOUISE VON NIEDA

216.   Sometime during the first week of February, 2007, Louise Von Nieda consumed peanut butter from a jar of Great Value peanut butter.

217.   The jar carried a product code beginning with "2111" on the jar lid.

218.   Approximately one day after consuming the Great Value peanut butter, Ms. Von Nieda began to experience diarrhea, nausea, vomiting, fatigue and fever.

219.   Ms. Von Nieda continued to experience diarrhea and fatigue for approximately two and a half weeks.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF JOHANNA WILSON

220.   Sometime in late January, 2007, Johanna Wilson purchased a jar of Peter Pan peanut butter.

221.   The jar carried a product code beginning with "2111" on the jar lid.

222.   Ms. Wilson's two-year old daughter Emerald Wilson consumed a peanut butter sandwich made with the Peter Pan peanut butter on

or around February 4, 2007.

223.   Ms. Wilson consumed a peanut butter sandwich made with the Peter Pan peanut butter on or around February 4, 2007.

224.   On February 5, 2007, Emerald Wilson began to experience abdominal cramps, vomiting, diarrhea and fever.

225.   On February 5, 2007, Johanna Wilson took Emerald Wilson to the doctor.

226.   Emerald Wilson continued to suffer from diarrhea, abdominal cramps, fever, and fatigue until February 9, 2007.

227.   While at work on February 6, 2007, Ms. Wilson began to experience diarrhea, vomiting, and severe abdominal pain.  Because of her illness, she left work early.

228.   Ms. Wilson's vomiting, diarrhea and abdominal pain worsened over the night.  At approximately 5:00 am on the morning of February 7, 2007, she went to the emergency room where she was treated for her symptoms.

229.   Because of her illness, Ms. Wilson missed three full days of work.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF RICHARD ZAMSKY

230.   Sometime during the first week of February, 2007, Richard Zamsky consumed peanut butter from a jar of Great Value peanut butter.

231.   The jar carried a product code beginning with "2111" on the jar lid.

232.   Approximately one day after consuming the Great Value peanut butter, Mr. Zamsky began to experience diarrhea, nausea, vomiting, fatigue and fever.

233.   Mr. Zamsky continued to experience diarrhea and fatigue for approximately three weeks.

## COUNT ONE
### Negligence

234.      Plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

235.      At all times relevant, ConAgra had a duty to exercise reasonable care in the manufacturing, packaging, distribution and sale of its peanut butter, including the duty to ensure that its peanut butter was not unreasonably dangerous to consumers due to contamination with *Salmonella* bacteria.

236.   ConAgra knew or in the exercise of reasonable care should have known that if its peanut butter was not properly manufactured, packaged,

distributed and sold, such peanut butter was likely to be contaminated with *Salmonella* and therefore unreasonably dangerous to consumers.

237.  ConAgra breached its duties by failing to exercise ordinary care in the manufacturing, packaging, distribution and sale of its peanut butter, and manufactured, distributed and sold peanut butter contaminated with *Salmonella*.

238.  As a direct and proximate cause of ConAgra's negligence, Grady and Frances Ware, Ricky Bunn, and the class members have suffered the damages and injuries described herein.

## COUNT II
## Strict Liability

239.  Plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

240.  ConAgra is engaged in the business of manufacturing, packaging, distributing and selling products to consumers, including Peter Pan brand peanut butter and Great Value brand peanut butter.

241.  ConAgra manufactured and placed in the stream of commerce the jars of Peter Pan brand peanut butter and the jars of Great Value brand peanut butter carrying a product code beginning with "2111" on the jar lid.

242.   The peanut butter manufactured, packaged, distributed and sold by ConAgra is a "ready-to-eat" product that is intended and expected to be eaten without being first cooked or heated.

243.   At the time they left ConAgra's control and were placed in interstate commerce, jars of Peter Pan brand and jars of Great Value brand peanut butter bearing the product code "2111" on the jar lid were defective and unreasonably dangerous because they were contaminated with *Salmonella* and therefore were not safe for normal handling and consumption, the intended and expected use for which they were sold.

244.   The jars of Peter Pan brand and the jars of Great Value brand peanut butter bearing the product code "2111" on the jar lid were expected to and did reach the plaintiffs and the class members without a substantial change in the condition in which they were sold.

245.   Plaintiffs and the class members could not by the exercise of reasonable care have discovered that the peanut butter they bought and consumed was contaminated with *Salmonella* and hence unreasonably dangerous.

246.   The defective and unreasonably dangerous condition (*Salmonella* contamination) of the jars of Peter Pan brand and the jars of Great Value brand peanut butter bearing the product code "2111" on the jar lid was

the direct and proximate cause of the damages and injuries suffered by Plaintiffs and the class members described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief, on behalf of themselves and the class:

(a) Certification of this action or common issues herein as a class action, appointment of appropriate class representatives and undersigned counsel as class counsel, and designation of any appropriate subclasses, for any or all claims and issues, under the applicable class action provisions;

(b) Such coordination and cooperation as may be appropriate between this Court and other courts that may exercise jurisdiction over the subject matter of this litigation;

(c) A determination of common issues and claims in a unitary, consolidated or classwide trial under Rules 42 and/or 23 of the Federal Rules of Civil Procedure;

(d) An award of compensatory damages to each injured class member in an amount deemed appropriate by the trier of fact;

(e) An award of prejudgment and post-judgment interest;

(f) An award of recoverable costs; and

(g) Any other and further legal and/or equitable relief to which they might be entitled at law or which this Court deems proper, including, according to proof, such exemplary or punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct.

## JURY DEMAND

Plaintiffs, for themselves and the members of the proposed Class, hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

/s/ Robert H. Smalley, III

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley, III
(GA Bar No. 653405)
P.O. Box 1105
Dalton, Georgia
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

JENKINS & JENKINS
Clay Jenkins
516 W. Main Street
Waxahachie, Texas 75165
Telephone: (972) 938-1234
Facsimile: (972) 938-7676)

Dated this 23rd day of March, 2007

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kathryn E. Barnett
Christopher Coleman
150 Fourth Avenue North
One Nashville Place, Suite 1650
Nashville, Tennessee 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965