IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE CONAGRA PEANUT BUTTER § | | Civil Action No. |
| PRODUCTS LIABILITY § | | 1:07-mdl-1845 TWT |
| LITIGATION § | | ALL CASES |

AFFIDAVIT OF KATHERINE KINSELLA

I, Katherine Kinsella, being duly sworn, hereby declare as follows:

1. I am President of Kinsella/Novak Communications, LLC ("KNC"), an advertising and legal notification consulting firm in Washington, D.C. that specializes in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation. My business address is 2120 L Street, NW, Suite 205, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2. I submit this affidavit in connection with *In Re ConAgra Peanut Butter Products Liability Litigation* Civil Action No. 1:07-mdl-1845 TWT pending in the U.S.

1

District Court for the Northern District of Georgia, Atlanta Division at the request of Plaintiffs' Counsel.

3. This affidavit is based upon my personal knowledge and upon information provided by Plaintiffs' Counsel, my associates, and staff. The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

4. KNC has developed and directed some of the largest and most complex national notification programs in the country. The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims. The firm has developed or consulted on over 250 notification programs, placing over $160 million in media notice. Selected cases include:

**Antitrust**

*In re Nasdaq Market-Makers Antitrust Litigation*, No. M21-68, 94 CV 3996, MDL No.1203 (S.D.N.Y.) (securities)

*State of Connecticut v. Mylan Laboratories, Inc.*, MDL No. 1290, Misc. No. 99-276 (D.D.C.) (pharmaceuticals)

*In re Toys "R" Us Antitrust Litigation,* MDL No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

*State of Florida v. Nine West Group, Inc.*, Civil Action No. 00 CV 1707 (S.D.N.Y) (shoes)

*In re Cardizem Antitrust Litigation*, 200 F.R.D. 326 (E.D. Mich.) (Cardizem)

*In re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.) (Buspar)

*State of Ohio vs. Bristol-Myers Squibb, Co.*, 1:02-CV-01080 (D.D.C.) (Taxol)

*Raz v. Archer Daniels Midland Co., Inc.*, No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid)

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361 (prerecorded music products)

*Kelley Supply, Inc. v. Eastman Chemical Co.*, No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates)

*Giral v. Hoffman-LaRoche Ltd.*, C.A. No. 98 CA 7467 (vitamins)

*Comes v. Microsoft Corp.*, Case No. CL82311, (Iowa Dist. Ct., Polk County) (software)

*In Re Insurance Brokerage Antitrust Litigation, Applies to All Commercial Insurance Brokerage Actions*, MDL No. 1663 Civil No. 04-5184 (FSH) (insurance)

*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (CA:01-CV-12257-PBS)(D. Mass.)(Certification & GlaxoSmithKline Settlement)

*Cox v. Microsoft Corporation*, Index No. 105193/00 (N.Y. Sup. Ct., New York County) (software)

*In re: Monosodium Glutamate Antitrust Litigation*, D-0202-CV-0200306168, D-202-CV-200306168 (N.M. 2nd Dist. Ct., County of Bernalillo) (MSG

*Conroy v. 3M Corporation*, Case No. C-00-2810 CW (N.D. Cal.) (invisible tape)

*In re: Insurance Brokerage Antitrust Litigation*, MDL No. 1663 (D.N.J.) (Gallagher Settlement)

**Consumer**

*Woosley v. State of California*, No. CA 000499 (Cal. Super. Ct. Los Angeles County) (automobiles)

*Fettke v. McDonald's Corp.*, Case No. 044109 (Cal. Super. Ct., Marin County) and *BanTransFat.com v. McDonald's Corp.*, Case No. 034828 (Cal. Super. Ct., Marin County) (trans fatty acids)

*Weiner v. Cal-Shake, Inc.*, J.C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Galanti v. The Goodyear Tire & Rubber Company*, Case No. 03-209 (D.N.J.) (radiant heating)

*Daniel v. AON Corporation*, No. 99 CH 11893 (Ill. Cir. Ct., Cook County) (insurance contingency fees)

*Reiff v. Epson America, Inc.* and *Latham v. Epson America, Inc.*, J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers)

*Azizian v. Federated Department Stores, Inc.*, Docket No. 4:03 CV-03359 SBA (N.D. Cal.) (cosmetics)

*Lebrilla v. Farmers Group Inc.*, No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance)

*Hoorman v. GlaxoSmithKline*, No. 04-L-715 (Ill. Cir. Ct. Madison Cty.) (Paxil pharmaceutical)

*In re Tri-State Crematory Litigation*, MDL No. 1467 (N.D. Ga.) (improper burial)

**Discrimination**

*McNeil v. American General Life and Accident Insurance Co.*, No. 8-99-1157 (M.D. Tenn.) (insurance)

*Nealy v. Woodmen of the World Life Insurance Co.*, No. 3:93 CV-536 BN (S.D. Miss.) (insurance)

*In re Holocaust Victim Assets Litigation*, No. CV 96-4849 (Consolidated with CV-5161 and CV 97-461) (E.D.N.Y.) (Holocaust)

**Mass Tort**

*Ahearn v. Fibreboard Corporation*, C.A. No. 6:93-CV-526 (E.D. Tex.), and *Continental Casualty Co. v. Rudd*, C.A. No. 6:94cv458 (E.D.Tex.) (asbestos injury)

*Georgine v. Amchem, Inc.*, C.A. No. 93-CV-0215 (E.D.Pa.) (asbestos injury)

*Engle v. RJ Reynolds Tobacco Co.*, No. 94-08273 CA 20 (Fla. Cir. Ct., Dade County) (tobacco injury)

*Backstrom v. The Methodist Hospital*, No. H-94-1877 (S.D. Tex.) (TMJ injury)

**Pension Benefits**

*Forbush, Rhodes v. J. C. Penney Company, Inc. Pension*, Nos. 3:90-2719-X and 3:92-0109-X (N.D. Tex.)

*Collins v. Pension Benefit Guarantee Corp.*, No. 88-3406 and *Page v. Pension Benefit Guarantee Corp.*, No. 89-2997 (D.D.C.)

**Product Liability**

*Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Ch. Ct., Obion Co.) (polybutylene pipe)

*Naef v. Masonite Corp.*, No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product)

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation*, MDL No. 1114, C 95-3178 (N.D. Cal.) (oriented strand board)

*Cosby v. Masonite Corp.*, No. CV-97-3408 (Ala. Cir. Ct., Mobile County) (siding product) and *Quin v. Masonite Corp.*, No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product)

*Ruff v. Parex, Inc.*, No. 96-CvS 0059 (N.C. Super. Ct., Hanover County) (EIFS)

*Garza v. Sporting Goods Properties, Inc.*, No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition)

*Richison v. Weyerhaeuser Company Limited*, No. 05532 (Cal. Super. Ct., San Joaquin County) (roofing product)

*Shah v. Re-Con Building Products, Inc.*, No. C99-02919 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Hart v. Central Sprinkler Corp.*, No. BC 17627 (Cal. Super. Ct., Los Angeles County) and *County of Santa Clara v. Central Sprinkler Corp.*, No. CV 17710119 (Cal. Super. Ct., Santa Clara County) (sprinklers)

*Smith v. Behr Process Corporation,* No. 98-2-00635 (Wash. Super. Ct., Gray Harbor County) (stain product)

*Lovelis v. Titflex*, CIV. No. 04-211 (Ak. Cir. Ct., Clark County)  (gas transmission pipe)

*Shields vs. Bridgestone/Firestone, Inc., Bridgestone Corporation*, No. E-167.637 (D. Tex.) (tires)

*Baird v. Thomson Consumer Electronics*, No. 00-L-000761 (Ill. Cir. Ct., Madison County) (television)

*Peterson v. BASF Corporation*, File No. C2-97-295 (D. Minn.) (herbicide)

*Wholesale Electricity Antitrust Cases I & II*, J.C.C.P. Nos. 4204 & 4205 (Cal. Super. Ct., San Diego County) (energy)

*Foothill/De Anza Community College District v. Northwest Pipe Company*, No. CV-00-20749-JF/EAI (N.D. Cal.) (fire sprinklers)

*Posey v. Dryvit Systems, Inc*. No. 17,715-IV (Tenn. Cir. Ct., Jefferson County) (EIFS stucco)

**Bankruptcies with Mass Tort Claimants**

*In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.) (breast implant)

*In re U.S. Brass Corp.*, No.94-40823S (Bankr. E.D. Tex.) (polybutylene)

*In re The Celotex Corp.*, Consolidated Case Nos: 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos)

*In re Johns-Manville Corp.*, 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos)

*In re Raytech Corp.*, No. 5-89-00293 (Bankr. D. Conn.) (asbestos)

*In re Kaiser Aluminum Corporation,* Case NO. 02-10429 (JFK) (D. Del)

*In re Owens Corning,* Chapter 11, No. 00-03837 (MFW) (Bankr. D. Del.)

*In re W.R. Grace & Co.,* Chapter 11, No. 01-01139 (JJF) (Bankr. D. Del.)

*In re Armstrong World Industries, Inc.,* Chapter 11, No: 00-4471 (JJF) (Bankr. D. Del.)

5.  I have testified as an expert at trial and in a deposition in *Engle v. R. J. Reynolds Tobacco*, No. 94-08273 (Fla. Cir. Ct., Dade County). I have been deposed as an expert in *In re NASDAQ Market-Makers Antitrust Litigation*, M21-68 RWS), 94-CIV. 3994 (RWS), M.D.L. No. 123 (S.D.N.Y.), *In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.), *Georgine v. Amchem, Inc. et al.*, C.A. No. 93-CV-0215 (E.D. Pa.), *In re W. R. Grace & Co.*, Chapter 11, No.01-01139 (JJF) (Bankr. D. Del.) and *Gross v. Chrysler Corp.*, No. 061170 (Md. Cir. Ct., Montgomery County). I have testified in court in *In re Swan Transportation Company*, Chapter 11, Case No. 01-11690, *Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Ch. Ct., Obion County) and *Ahearn v. Fibreboard Corporation*, C.A. No. 6:93cv526 (E.D. Tex.) and *Continental Casualty Co. v. Rudd*, C.A. No. 6:94cv458 (E.D. Tex.).

6.  I am the author of *The Plain Language Tool Kit for Class Action Notice* published in the October 25, 2002 issue of <u>Class Action Litigation Report</u> and the author of *Quantifying Notice Results in Class Actions – the Daubert/Kumho Mandate* published in the July 27, 2001 issue of <u>Class Action Litigation Report</u> and the August 7, 2001 issue of <u>The United States Law Week</u>, both publications of the Bureau of National Affairs, Inc. In addition, I am author of *The Ten Commandments of Class Action Notice* published in the September 24, 1997 issue of the <u>Toxics Law Reporter</u> and co-author of *How Viable Is the Internet for Class Action Notice* published in the March 25, 2005 issue of <u>Class Action Litigation Report</u>, both also publications of the Bureau of National Affairs, Inc.

7.  Several courts have commented favorably regarding my analysis of the effectiveness of class notice plans and upon the plans of notice prepared by

8

      Kinsella Communications. For example, in *Ahearn v. Fibreboard Corp.*, No. 6:93cv526 (E.D. Tex.) and *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex.), Chief Judge Robert M. Parker stated: "I have reviewed the plan of dissemination and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [in the Agent Orange litigation] and Judge Pointer [in the Silicon Gel Breast Implant Litigation], and it appears to be clearly superior." Similarly, in *In re Celotex Corp.*, Nos. 90-10061-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.), the Hon. Thomas E. Baynes, Jr. stated: "[T]he record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally."

8. In *Cox v. Shell Oil Co.*, Civil Action No. 18,844 (Tenn. Ch. Ct., Obion County), a class action concerning polybutylene plumbing, Judge Michael Maloan, of the Tennessee Chancery Court, entered an Order approving the nationwide settlement and the notice plan, stating: "The Court finds the notice program is excellent. As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken."

9. In approving the class notice plan for implementation in the *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, D. Me., MDL No. 1361, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b)

(1)…. the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so."

10. The Honorable Jeremy Fogel, U.S. District Court for the Northern District of California, San Jose Division in *Foothill/De Anza Community College District v. Northwest Pipe Company*, No. CV-00-20749-JF/EAI (N.D. Cal.) commended the notice program as follows: "The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, LLC, a nationally-recognized expert in this specialized field. The Court finds and concludes that the Notice Program as designed and implemented provides the best practicable notice to the Class, and satisfied requirements of due process."

11. In *Cox v. Microsoft Corporation*, No. 105193/00 (N.Y. Supreme Ct., New York County) Judge Karla Moskowitz, stated "The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules.  The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class."

**Class Members**

12. The ConAgra MDL Class Action is brought on behalf of two proposed Classes essentially defined as:

> PERSONAL INJURY COMMON ISSUES CLASS:
>
> All persons who, on or after October 1, 2004, consumed any Peter Pan or Great Value brand peanut butter with a product code beginning with "2111" and who assert or allege claims sounding in personal injury therefrom.
>
> and
>
> PURCHASER CLASS:
>
> All persons who, on or after October 1, 2004, purchased any Peter Pan or Great Value brand peanut butter with a product code beginning with "2111" for personal, family, or household purposes, and not for resale, which was rendered unusable and valueless by the February 14, 2007 recall of such peanut butter;

**Notice Approach**

13. Based on information provided by Plaintiffs' Counsel, a large number of the Personal Injury Common Issues Class Members can be identified. Personal Injury Common Issues Class Members are the individuals most affected by the litigation. Members of the Purchaser Class, which number in the millions, are ascertainable by reference to the class definition, but not presently identified and not readily identifiable from Defendant's records or other sources.

14. Given the number of Class Members who are not yet identified, a multi-faceted approach relying primarily on paid media will be required. The elements of the Notice Program will include the following elements:

   a. Direct notice to all Class Members whose names and addresses can be ascertained. Direct notice is estimated to reach approximately 10,000 Class Members.

   b. Broad national paid media notice through a combination of print publications such as newspapers, consumer magazines and newspaper supplements and the Internet.

   c. National "earned media" outreach through a press release targeted to consumer reporters and general media.

   d. Internet notice through a dedicated Web site and Internet key word search optimization to enable Class Members to access information on the Class Action.

15. In addition to research conducted by KNC regarding Class Members, it is expected that information relating to the distribution of the contaminated ConAgra peanut butter can be provided to KNC from the discovery process. This additional information will inform the development of the Notice Program. At the appropriate time, KNC will provide for the Court a detailed Notice Program outlining the specific media selections and quantifying the reach of Class Members.

**Developing the Media-Based Notice Program**

16. KNC designs media-based notice programs directed to unidentified class members that:

    a. Identify the demographics of class members or affected consumers and establish a target audience or audiences;

    b. Outline the methodology for selecting the media and other notice program elements and how they relate to product usage or exposure; and

    c. Provide results that quantify for the court the adequacy of the notice based upon industry-recognized tools of media measurement.

17. All media is purchased based on demographics. Individuals within the general population consume media differently based on income, gender, age, education and the like. Media-based notice programs, therefore, must establish a clear demographic target or targets in order to select the media that will most effectively reach a specific audience.

18. To develop a profile of the demographics and media habits of Class Members, in this case, KNC will examine syndicated data available from the 2007 Doublebase Survey[1] from MediaMark Research, Inc. ("MRI"). MRI is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition and other relevant factors pertaining to major media including broadcast, magazines, newspapers and outdoor advertising. MRI provides a single-source measurement of major media, products, services and in-depth

---

[1] MRI produces an annual Doublebase, a study of 50,000+ adults consisting of two full years of data. The MediaMark sample consists of 26,000+ respondents. Fieldwork is done in two waves per year, each lasting six months and consisting of over 13,000 interviews. At the end of the interview, the field-worker presents a self-administered questionnaire that measures approximately 500 products/service categories, 6,000 brands, and various lifestyle

13

consumer demographic and lifestyle/psychographic characteristics. MRI provides demographic profiles of individuals in general, as well as profiles of those who use a specific service or product. The data allow the identification of demographics for any target group.

19. With respect to this case, MRI provides demographic and media usage information for "people who used Peter Pan or generic brand peanut butter within the past 6 months." Although the Class Period is longer than 6 months, the demographic and media habits provided by MRI can be expected to be the same for the class period.

20. Both in terms of demographics and media habits, Peter Pan and generic peanut butter consumers generally resemble the average adult population. They are also average consumers of most media.

21. KNC will use MRI to select the most effective and cost efficient media for notification purposes by allowing different types of media to be compared for audience penetration and cost. KNC will provide for the Court a detailed Notice Program outlining the specific media selections and quantifying the reach of Class Members.

22. The reach of the Notice Program will be quantified using the standard advertising measurements of *reach* and *frequency*. *Reach* is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles. *Frequency* is the estimated average number of times an audience is exposed to an advertising vehicle carrying the message. Reach and frequency

---

activities. Resulting data is weighted to reflect the probabilities of selection inherent in the sample design and then balanced so that major study demographics match the most recent independent estimates.

calculations are estimates within a standard margin of error that provide the media planner with a reliable basis upon which to judge penetration of target audiences by media. ConAgra's information on its marketing and shipping patterns may also prove helpful in framing the specific geographic areas and populations to which the recalled peanut butter was shipped.

23. Software programs created by the media industry allow reach and frequency estimates to be calculated. Statistical formulas factor out duplication of readership or viewership among the target audience and allow reach and frequency, as well as other media measurements, to be calculated. This allows the net reach to the audience of a media schedule using various kinds of print media to be determined.

24. As stated in paragraph 14, the Notice Program will use a combination of print publications such as newspapers, consumer magazines and newspaper supplements and the Internet, targeted to the relevant demographic.

25. All print advertising ("Publication Notice") will carry a toll-free telephone number, a Web site address and a mailing address for potential Class Members to request or access the *Notice of Class Action Pendency*. The Publication Notice as well as the *Notice of Class Action Pendency* will be plain language complaint as required by revisions to Rule 23 of the Federal Rules of Civil Procedure.

### Earned Media

26.  The Notice Program will also include an earned media segment to augment the paid media portion of the Notice Program. This will consist of a press release that will be distributed on PR Newswire's Full National Circuit reaching over 4,000 media outlets and 3,600 Web sites. Selected individual consumer reporters will also be targeted. The press release will highlight the toll-free telephone number and Web site address that Class Members can call or visit for complete information.

### Informational Web Site

27.  A Web site will be established and listed with major search engines to enable Class Members to get information on the Class Action. KNC will use "INeedHits.com" Search Engine Optimization ("SEO") services to increase the ability of Web users to find the case Web sites by name and content. INeedHits.com will ensure that the case Web site address and content will be included in leading Web search engines and directories and indexed for maximum effectiveness when users search for information about the Class Action.

## Conclusion

28. Utilizing these well-established, widely-accepted, Court-approved and updated techniques, augmented by specific information expected to be provided in discovery, the reach of our target audiences and the number of exposure opportunities to the notice information will be adequate and reasonable under the circumstances. The Notice Program will conform to standards employed by KNC in notification programs designed to reach unidentified members of certification classes and will be fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct. If called as a witness, I could and would competently testify thereto.

_____          _____
Katherine Kinsella                                           Date

SUBSCRIBED and SWORN before me on the 6th day of December, 2007.

_____

Notary Public In and For the District of Columbia

Debra L. Vaughan
Notary Public District of Columbia
My Commission Expires April 14, 2008

17