IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN RE CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1845 ALL CASES 1:07-MD-1845-TWT |
|---|---|

ORDER

These are products liability cases consolidated before this Court for pretrial proceedings. They are before the Court on the cross Motions for Reconsideration of the Court's Order on Motion for In Camera Review [Doc. 644, 645]. A detailed factual background is in the Order on Motion for In Camera Review [Doc. 637]. In that Order, the Court ruled upon the application of the attorney-client privilege and work product doctrine to 100 documents selected by the parties. Afterward, the Court allowed each party to request de novo review of up to five of the documents.

I. Legal Standard

State law determines the attorney-client privilege in a diversity case. Fed. R. Evid. 501. To figure out which state law applies, a federal court should apply the choice of law rules of the state in which it sits. See 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5434 (1980). In

multidistrict litigation, however, the MDL court is a transferee court and, for issues of state law, the transferee court should apply the law of the transferor court. See Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). That means applying the choice of law rules of each of the states where the transferor courts sit to decide which state law provides the attorney-client privilege. In this case, that could get very complicated because, at the time the case was consolidated, lawsuits had been filed in thirteen federal judicial districts in ten states. Fortunately, it is not necessary to decide this potentially complicated issue. For purposes of this motion, "[t]he elements of the attorney-client privilege are well-known and are not, in any material respect, disputed here." In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); see also In re Human Tissue Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 104298, at *48 (D.N.J. Dec. 12, 2008). Indeed, the Plaintiffs do not brief the choice of law issue in any detail, and ConAgra ultimately concedes that the elements of the attorney-client privilege are well-known and fundamental. See 2 Paul R. Rice, Attorney-Client Privilege in the United States, § 12:7 (2d ed. 1999) ("[A] court will make a choice of law determination only if the decision will make an appreciable difference in the case at bar.").

ConAgra says that either Nebraska or Georgia law should determine the attorney-client privilege and so it is sufficient to start there.[1] Under Nebraska law, the attorney-client privilege protects:

> confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the client and a representative of the client, or (e) between lawyers representing the client.

Neb. Rev. Stat. § 27-503. Under Georgia law, the attorney-client privilege protects confidential communications between the attorney and the client. Southern Guar. Ins. Co. v. Ash, 192 Ga. App. 24, 27 (1989). Georgia law does not "distinguish between confidentially communicated legal advice that is requested specifically by the corporate client, nor preventative legal advice that is confidentially provided sua sponte by the lawyer to the authorized agents with whom he regularly deals of his established corporate client." Id. at 28. Both Nebraska and Georgia law recognize the fundamental elements of the attorney-client privilege and, as conceded by ConAgra,

---

[1] In its briefing for the original Order, ConAgra maintained that Nebraska law should apply because "[t]he bulk of the legal advice rendered occurred in Nebraska." (ConAgra's Memorandum of Law in Response to Pls.' Mot. For In Camera Review of Privileged Documents, at 9.) In the alternative, ConAgra sought the application of Georgia law because "the peanut butter at issue was manufactured [in Georgia]." (Id.)

"[n]o essential conflict exists between [Nebraska and Georgia] privilege law." (ConAgra's Memorandum of Law in Response to Pls.' Mot. For In Camera Review of Privileged Documents, at 16.)

Unlike the attorney-client privilege, federal law governs the work product doctrine, even in a diversity case. United Coal Companies v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The key phrase is "prepared in anticipation of litigation." A document is prepared in anticipation of litigation when:

> the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work-product [protection] for documents prepared in the regular course of business rather than for purposes of the litigation.

8 Charles Alan Wright et al., Federal Practice and Procedure, § 2024 (2d ed. 1994); see also Regions Fin. Corp. & Subsidiaries v. United States, 2008 U.S. Dist. LEXIS 41940, at *18 (N.D. Ala. May 8, 2008) ("[T]he court concludes that the Eleventh Circuit would align itself with the majority of the other courts of appeal and adopt the 'because of litigation' test."). The work product doctrine provides a qualified privilege for

general work product and a nearly absolute privilege for opinion work product. See Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994).

## II. Discussion

The Plaintiffs seek reconsideration of Document 22. Their motion with respect to this document is denied. The Court protected the document against discovery in its original Order on these grounds:

> Document 22 is protected by the work product doctrine. The document is an email string involving in-house counsel about ConAgra's internal investigation. The emails discuss an audit of ConAgra's peanut butter facilities. The emails are protected by the work product doctrine because the emails were prepared because of the prospect of litigation.

(Order, at 17). The Plaintiffs characterize the document as part of an internal investigation done as part of a regular course of business. Previously, the Court categorized documents as being in the regular course of business generally in two instances: documents crafting or reflecting statements for public consumption, and factual accounts of contacts with government officials. Document 22, by contrast, discusses internal procedures for its investigation. Considering that the procedures outlined were under the specific direction of legal counsel with an eye towards litigation, the document was not drafted in the regular course of business. See In re Grand Jury Subpoena, 2004 U.S. Dist. LEXIS 4108, at *52-53 (D. Mass. Mar. 16,

2004) ("Many courts have held . . . that once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement."). Document 22 should receive protection under the work product doctrine.

The Plaintiffs seek reconsideration of Document 24. Their motion with respect to this document is denied. The Court protected the document in its original Order on these grounds that:

> Document 24 is protected by the attorney client privilege and the work product doctrine. The document is an email to in-house counsel about a PowerPoint presentation to the FDA. The sender included a draft of the PowerPoint presentation as an attachment to the email. The email and the attachment are protected by the attorney client privilege because the email seeks legal advice. The email and the attachment are also protected by the work product doctrine because the email and the attachment were prepared because of the prospect of litigation.

(Order, at 17). The Plaintiffs seek a determination as to whether the attachment was actually a final draft. The document is clearly marked as a draft, even listing the date of the presentation as "XXXX." The document does not appear to be the final version (if it is it should be produced) of the presentation to the FDA, and, for the reasons stated in the original Order, Document 24 should be protected by the attorney-client privilege and the work product doctrine.

The Plaintiffs seek reconsideration of Document 49. Their motion with respect to this document is denied. The Court protected the document in its original Order on these grounds:

> Document 49 is protected by the work product doctrine. The document is an email string involving about ConAgra's internal investigation. The emails discuss the procedure for product testing and communication with outside experts. The emails are protected by the work product doctrine because the emails were prepared because of the prospect of litigation.

(Order, at 26). The Plaintiffs seek to characterize the document as part of an internal investigation done as part of a regular course of business. Previously, the Court categorized documents as being in the regular course of business mostly in two instances: documents crafting or reflecting statements for public consumption and mere factual accounts of contact with government officials. Document 49, by contrast, discusses internal procedures for its investigation. Considering that the procedures outlined were under the specific direction of legal counsel with an eye towards litigation, it does not appear that the document was drafted in the regular course of business. See In re Grand Jury Subpoena, 2004 U.S. Dist. LEXIS 4108, at *52-53 (D. Mass. Mar. 16, 2004) ("Many courts have held . . . that once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement."). Document 49 should receive protection under the work product doctrine.

The Plaintiff also seeks production of the attachment accompanying Document 49. The attachment -- which purportedly contains test results surrounding the recall --

was not part of the initial in camera review undertaken as part of the initial Order. Therefore, that request is denied.

The Defendant seeks reconsideration as to Document 8. Its motion with respect to this document is granted in part and denied in part. The Court stated that:

> Document 8 is not protected by the attorney client privilege or the work product doctrine. The document is an email string about an inquiry of a food-service customer. There were eight emails sent before the email string reached in-house counsel. The emails are not protected by the attorney client privilege because the subject matter and the recipients of the email[s] suggest that the emails deal with customer service issues rather than legal advice. The emails are also not protected by the work product doctrine because the emails were prepared in the regular course of business.

(Order, at 11.) In response, ConAgra has narrowed its claim for protection and asks the Court to look at the emails individually. Looking at the emails individually, the last two emails, located on Bates-numbered NECA0206000457, are protected by the attorney-client privilege because the emails contain legal advice about responding to the food-service customer. The last two emails are also protected by the work product doctrine because the emails were prepared because of the prospect of litigation.

The Defendant seeks reconsideration of Document 47. Its motion with respect to this document is granted in part and denied in part. The Court said that Document 47 is not protected because "[t]he description in the privilege log . . . is not sufficient to support a claim under the attorney client privilege or the work product doctrine."

(Order, at 25-26). ConAgra has since provided additional information to supplement the privilege log. There is now an adequate basis to decide the claim for protection. Document 47 is actually a collection of documents, and so the Court will treat each document separately. The first document is an unspecified, handwritten set of notes about the general background of the contaminated peanut butter. The notes are not protected by the attorney-client privilege or the work product doctrine because ConAgra has waived its claims for protection of the notes. (ConAgra's Mot. to Reconsider the Court's February 3, 2009 Order, at 4 n.1.) The second document is a chart organizing information about personal injury claims asserted against ConAgra shortly after the recall. The chart includes estimates of potential future claims, confidential sums spent in resolving claims, and the amounts reserved by ConAgra for unresolved and potential claims. The chart is protected by the attorney-client privilege because the chart contains confidential communications and legal advice. The chart is also protected by the work product doctrine because the chart was prepared because of the prospect of litigation. The third document is an email about insurance coverage for the losses associated with the product recall. The email lists six general questions about the contaminated peanut butter. The email was sent to in-house counsel and many non-lawyers. The email is not protected by the attorney-client privilege because the subject matter and the recipients of the emails suggest that the emails do not seek

legal advice. The email is also not protected by the work product doctrine because the email was prepared in the regular course of business. The fourth document is essentially the same as the third document, and so it is not protected by the attorney-client privilege or the work product doctrine for the same reasons.

The Defendant seeks reconsideration of Document 84. Its motion with respect to this document is denied. The Court said that:

> Document 84 is not protected by the attorney client privilege or the work product doctrine. The document is an email string about who should attend a meeting with the FDA. None of the emails involve in-house counsel or advice given by in-house counsel. The emails are not protected by the attorney client privilege because the emails do not seek legal advice. The emails are also not protected by the work product doctrine because the emails were prepared in the regular course of business.

(Order, at 40.) ConAgra says that "[w]hile there are certain logistical aspects to the emails contained in Document 84, the emails also contain confidential strategic discussions regarding the FDA meeting." (ConAgra's Mot. to Reconsider the Court's February 3, 2009 Order, at 3.) But the strategic discussions in the emails are primarily about ConAgra's long-term business relationship with the FDA and do not involve legal advice from in-house counsel. By contrast, most of the other documents that discuss meetings with the FDA focus on the immediate issue of contaminated peanut butter and involve legal advice from in-house counsel. These emails are not protected by the attorney-client privilege because the emails do not deal with legal advice. The

emails are also not protected by the attorney-client privilege because the emails were prepared in the regular course of business.

### III. Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Reconsideration [Doc. 644] is DENIED. The Defendant's Motion for Reconsideration [Doc. 645] is GRANTED in part and DENIED in part.

SO ORDERED, this 23 day of March, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge