IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1845 ALL CASES<br><br>1:07-MD-1845-TWT |

ORDER

These are personal injury actions.  They are before the Court on the Plaintiffs'
Motion to Exclude the Testimony of Dr. Mansour Samadpour, Mr. Gregory Ma, Dr.
Douglas Weed, Dr. Samuel Miller, and Dr. Linda Harris [Doc. 1265], which is
DENIED.

## I.   Introduction

These cases arise out of ConAgra's 2007 recall of Peter Pan and Great Value
peanut butter, after the CDC and FDA reported an association between these products
and Salmonella Tennessee.  After the recall, many consumers sued ConAgra, alleging
that they became ill after eating contaminated Peter Pan or Great Value peanut butter.
The lawsuits were consolidated by the MDL Panel in this Court for pretrial
proceedings.  ConAgra designated Dr. Mansour Samadpour, Mr. Gregory Ma, Dr.
Douglas Weed, Dr. Samuel Miller, and Dr. Linda Harris as expert witnesses.  The

Plaintiffs now move to exclude these experts' testimony under Federal Rule of Evidence 702.

## II.  Rule 702 Standard

Federal Rule of Evidence 702 governs the admission of expert testimony. Pursuant to Rule 702, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, the Court may permit a qualified expert to testify thereto if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The party offering the expert's testimony has the burden to prove that it is admissible by a preponderance of the evidence.  Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

## III.  Discussion

A.    Dr. Samadpour and Mr. Ma

Dr. Mansour Samadpour and Gregory Ma are microbiologists at the Institute for Environmental Health/Molecular Epidemiology, Inc. ("IEH"), an organization retained by ConAgra and several plaintiffs' attorneys to test jars of recalled peanut butter for Salmonella.  Samadpour and Ma intend to testify about the test methods and

results.  Specifically, they plan to testify that 29 out of 1,271 samples of ConAgra peanut butter cultured positive for Salmonella; a "contamination rate" of 2.28%. The Plaintiffs say that Samadpour and Ma's testimony is unreliable and should be excluded for three reasons.

First, the Plaintiffs say that Samadpour and Ma arbitrarily excluded the results of over 36% of the Salmonella tests that they performed.  Samadpour and Ma admit that they excluded the results of 729 tests from their reported analysis. But they explain that these results were excluded because the tests were performed by IEH for plaintiffs' attorneys and were subject to confidentiality agreements that precluded disclosure of the test results to ConAgra.  (Ma Dep. at 9-10); (Samadpour Dep. at 17-21.)  The Plaintiffs offer no evidence to the contrary.  Moreover, there is no indication that the excluded samples would have yielded statistically different results than the reported samples.  Accordingly, this is not grounds to exclude Samadpour and Ma's testimony as unreliable.

Second, the Plaintiffs claim that Samadpour and Ma included test results of samples that were too small to yield reliable results.  The Bacterial Analytical Manual ("BAM") method used by IEH calls for 25-gram samples.  Some plaintiffs did not have enough peanut butter left to provide a 25-gram sample.   In those cases, Samadpour and Ma tested less than 25 grams of peanut butter.  ConAgra says that this

was unavoidable and occurred in "a very small number" of cases. (Ma Dep. at 7, 14-15.) Moreover, Samadpour and Ma testified that the smaller samples still yielded reliable results because the BAM method is extremely sensitive, the samples were well-mixed prior to testing, and the testing method was very robust. The Plaintiffs offer no evidence to the contrary. Accordingly, this is not grounds to exclude Samadpour and Ma's testimony as unreliable.

Third, the Plaintiffs say that Samadpour and Ma included test results of samples that were too old to yield reliable results. The Plaintiffs say that 99.99% of Salmonella in peanut butter dies after 24 weeks, rendering Salmonella tests conducted more than 24 weeks after manufacture unreliable. They base this conclusion on an article co-authored by defense expert Dr. Larry Beuchat. However, Dr. Beuchat's article states only that Salmonella can be reliably recovered from peanut butter at least up to 24 weeks post manufacture. Burnett, S.L., et al., "Survival of Salmonella in peanut butter and peanut butter spread," 89 J. Appl. Microbiol. 472, 475 (2000). It does not address whether Salmonella can survive in peanut butter for more than 24 weeks. (Beuchat Rep. ¶ 4.) In fact, Dr. Beuchat stated in his report that Salmonella would probably be detectable a year or more after manufacture. Id. Likewise, the CDC has reported that "Salmonella organisms persist indefinitely in high-fat, low-water-activity foods such as peanut butter." Centers for Disease Control and

Prevention, "Multistate Outbreak of Salmonella Infections Associated with Peanut Butter and Peanut Butter-Containing Products -- United States, 2008-2009," 58 MMWR 1-6 (Jan. 29, 2009).  Accordingly, this is not grounds to exclude Samadpour and Ma's testimony as unreliable.

      B.     <u>Dr. Douglas Weed</u>

Dr. Douglas Weed intends to testify about the appropriate methodology for determining specific causation in contaminated food cases.  Based on this methodology, he plans to testify that plaintiffs who did not visit the doctor cannot show that their symptoms were more likely than not caused by contaminated peanut butter.  The Plaintiffs say that Dr. Weed's testimony should be excluded for two reasons.

First, the Plaintiffs argue that he is not qualified to testify on these topics.  Dr. Weed is a faculty member in the Department of Epidemiology at Johns Hopkins School of Hygiene and Public Health.  He has published numerous articles on topics including causal inference, epidemiological and public health methods, and evidentiary and inferential methods.  He is also familiar with the concept of legal causation, having served as a visiting scholar at the Federal Judicial Center and lectured on general and specific causation at legal conferences.  Despite his credentials, the Plaintiffs say that he is not qualified because he has never applied his

proposed methodology to food-borne illnesses or infectious diseases and is not an expert in Salmonella. However, Dr. Weed explains that the methodology for assessing causation is the same regardless of the cause -- in other words, that methods are not disease-specific. (Weed Dep. at 15.) The Court sees no reason to discount Dr. Weed's explanation. Accordingly, this is not grounds to exclude Dr. Weed's testimony.

Second, the Plaintiffs say that Dr. Weed's testimony is unreliable because his methodology for determining causation takes into account Samadpour and Ma's contamination rate data. For the reasons stated above, the Court does not find that Samadpour and Ma's data is unreliable. Therefore, Dr. Weed's reliance on this data is not grounds to exclude his testimony.

C.    Dr. Samuel Miller

Dr. Samuel Miller intends to testify about the causes of gastroenteritis; the rates and sources of salmonellosis; the investigation by the CDC that led to ConAgra's voluntary recall; and the possible prognoses for patients with salmonellosis. He also plans to testify about the limitations of patient history and physical exams in determining the actual cause of gastroenteritis and opine that a stool culture is the only method that allows for the identification of the source of a bacterial infection of the gastrointestinal tract. In addition, he intends to testify that plaintiffs who did not visit

the doctor cannot show that their symptoms were more likely than not caused by contaminated peanut butter. The Plaintiffs say that Dr. Miller's testimony should be excluded for two reasons.

First, the Plaintiffs say that he is not qualified to testify on these topics. The Court disagrees. Dr. Miller is a professor of medicine at the University of Washington in Seattle. He has also taught at Harvard Medical School and served as a clinical and research fellow in Massachusetts General Hospital's Infectious Disease Unit. He has published over 50 articles and 15 book chapters on Salmonella or salmonellosis. He is qualified to testify about the designated topics.

Second, the Plaintiffs say that Dr. Miller's testimony is unreliable because his opinions, like Dr. Weed's, are based in part on Samadpour and Ma's contamination rate data. For the reasons stated above, Dr. Miller's reliance on this data is not grounds to exclude his testimony as unreliable.

D.    Dr. Linda Harris

Dr. Linda Harris intends to offer the following opinions: (1) that as of February 2007, there was no industry standard for a specific minimum log reduction or minimum time and temperature parameter for the dry roasting of peanuts; (2) that levels of Salmonella on raw peanuts are likely to be similar to those found on almonds; (3) that ConAgra's HACCP plan appropriately identified dry roasting as a

control measure capable of reducing potential biological hazards; (4) that ConAgra properly evaluated and monitored that control measure; (5) that ConAgra's color sorter was properly evaluated and monitored; (6) that finished product testing, internal ConAgra audits, and third-party audits verified that the HACCP program's critical limits were being met and provided an adequate microbial kill; (7) that ConAgra took appropriate corrective action following detection of Salmonella in an isolated finished product in October 2004; and (8) that there is no evidence that the outbreak at issue was attributable to the roaster.

The Plaintiffs say that Dr. Harris' testimony should be excluded because she is not qualified to testify on these topics.  The Court disagrees.  Dr. Harris is the associate director of UC-Davis's Western Institute of Food Safety and Security.  She has served on the USDA's National Advisory Committee for the Microbiological Criteria for Foods and has published numerous papers on food-borne Salmonella.  She has also served as a food safety expert in litigation before various courts.  More recently, she has developed a sub-specialty in nuts, publishing several articles about the thermal treatment of almonds contaminated with Salmonella.

The Plaintiffs say that Dr. Harris' expertise in almonds does not qualify her to testify about peanuts.  However, "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case."  Trilink Saw Chain,

LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008).  Instead, an expert "with the education or background to permit [her] to analyze a given set of circumstances . . . can through reading, calculations, and reasoning from known scientific principles make [herself] very much an expert in [regard to] the particular product even though he has not had actual experience" with the product.  Id. (quoting Santoro v. Donnelly, 340 F. Supp. 2d 464, 473 (S.D.N.Y. 2004)).  It is true that Dr. Harris has no specific experience with peanuts.  However, she has broad expertise in food-borne Salmonella as well as specific expertise in almonds, a high-fat, low-moisture food that has properties similar to peanuts.  Accordingly, the Court finds that she is qualified to testify on the designated topics.

## IV.   Conclusion

For the reasons stated above, the Plaintiffs' Motion to Exclude the Testimony of Dr. Mansour Samadpour, Mr. Gregory Ma, Dr. Douglas Weed, Dr. Samuel Miller, and Dr. Linda Harris [Doc. 1265] is DENIED.

SO ORDERED, this 22 day of March, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge